<sup></sup>Mar. 20,} 1876. }          TUCK *v.* HARTFORD FIRE INS. CO.

*Insurance—Mistake cured by the statute.*

Under General Statutes, ch. 157, sec. 2, an omission by one applying for insurance to state fully and truly the state of the title to the property upon which insurance is sought will not avoid the policy, unless such omission was intentional and fraudulent.

The plaintiff's policy was on the interest of mortgagors in mortgaged premises. There was another policy on the same interest in another company, and also an insurance of the interest of mortgagees in a third company. The plaintiff's policy contained a provision that the assured should not be entitled to recover of the defendants any greater proportion of the loss than the amount insured by their policy bore to the

whole sum insured on said property, without reference to the solvency or liability of other insurers. *Held*, that the jury were properly directed to apportion the loss between the defendants and the other company having insurance on the same interest, without taking into account the value of the interest of the mortgagees on the insurance on that interest.

FROM BELKNAP CIRCUIT COURT.

ASSUMPSIT, upon a policy of insurance, which bears date December 2, 1870.

The more material portion of the policy is as follows : " By this policy of insurance, the Hartford Fire Insurance Company, in consideration of the receipt of $18.75, do insure Messrs. S. M. Tuck & Co., of Lake Village, N. H., to the amount of $2,500, for the term of three months, as follows, viz. : $1,750 on their three-story frame steam-mill, with engine-house and shed attached ; $750 on steam-engine, boiler, shafting, and steam-pipes therein. Said premises are owned by the assured, and are situate at Lake Village, N. H.,—this insurance to include a carpenters' risk for the purposes of repairs. Other insurance permitted.

"Against all such immediate loss or damage, sustained by the assured and their legal representatives, as may occur by fire to the property specified, not exceeding the sum insured nor the interest of the assured in the property, except as hereinafter provided ;   *   *   if the assured, in a written or verbal application, makes any erroneous representation, or omits to make known any fact material to the risk ;   *   *   or if the assured is not the sole and unconditional owner of the property insured, or (if said property be a building or buildings) of the land on which such building or buildings stand, by a sole, unconditional, and entire ownership and title, and is not so expressed in the written portion of the policy :   *   *   then, and in every such case, this policy shall be void.   *   *   In no case shall the claim be for a greater sum than the actual damage to or cash-value of the property at the time of the fire, nor shall the assured be entitled to recover of this company any greater proportion of the loss or damage than the amount hereby insured bears to the whole sum insured on said property, whether such other insurance be by specific or by general or floating policies, and without reference to the solvency or the liability of other insurers."

At the time of effecting this insurance, the plaintiffs effected another insurance of the same amount, on the same property, in the North American Insurance Company.

The steam-mill was destroyed, and some of the other property insured was damaged by fire, January 20, 1871.

On December 2, 1865, one Appleton owned the mill and about one quarter of an acre of land adjacent. On that day he mortgaged the entire tract to Sleeper and Roby to secure notes of even date. Subsequently Appleton became bankrupt, and the equity of redemption was conveyed by his assignee to Petric & Co., the holders of a second mort-

gage. January 6, 1870, Sleeper & Roby entered to foreclose their mortgage, and seasonably published and recorded legal notice.

The plaintiffs introduced the record of a deed dated May 28, 1870, from N. W. Allen, register in bankruptcy, to Wm. N. Guion, purporting to convey to said Guion, as assignee of Petrie & Co., all the rights of Petrie & Co. to the premises. November 29, 1870, Guion, acting as assignee, sold at public auction all the right of Petrie & Co. to the premises. At that time the Sleeper mortgage was still outstanding, there being due on it $2,500 principal and $155 interest. It was understood at the sale that the Sleeper mortgage could and would be purchased for the benefit of the buyer at the auction sale.

The plaintiffs bid off the property for $4,950, with the understanding that $2,295 of this amount was the price of the equity, and the balance of $2,655 was the sum requisite to purchase the Sleeper mortgage. The plaintiffs immediately went into possession, paying $500 down, giving a note for $1,950 payable in thirty days, and a note for $2,500 payable in one year. The cash payment of $500 and the note for $1,950 were intended to include the price of the equity ($2,295), and the interest due on the Sleeper mortgage ($155). On that day a written agreement was signed by Guion and the plaintiffs, which, after reciting the sale of the equity to the plaintiffs for $2,295, proceeds as follows:

" Said property is subject to a mortgage to Sleeper and Roby, on which there is due the sum of $2,655, November 29, 1870. Said Guion is to purchase said mortgage, and hold the same for one year from December 1, 1870, when said Plummer and Tuck agree to pay the same, with interest, from December 1, 1870. Said Plummer and Tuck are to pay, as the purchase-money of said property, the sum of $500 in cash, and $1,950 in thirty days from date, upon delivery of a deed of the same. Upon payment to said Guion of the amount due upon said mortgage, said Guion will transfer said mortgage to them."

At the same time a deed of the equity, from Guion to Plummer and Tuck, was drawn up. The plaintiffs offered this deed in evidence, without calling either of the subscribing witnesses. The defendants objected for want of due proof of execution. Tuck testified,—" The witnesses were not persons living in the state, to my knowledge" (meaning " so far as I know " ) : " I never saw them before or since. They came with Guion. I don't know where they are to be found. Guion is doing business in New York city." Thereupon the deed was admitted subject to exception, Tuck testifying that it was executed in his presence, except the acknowledgment.

The deed was not delivered at that time. Subject to exception, Tuck was permitted to testify that the plaintiffs gave time for Guion to take the deed to New York, as their counsel thought that a clause in it was not entirely correct.

December 29, 1870, the plaintiffs paid their note for $1,950. The deed was then lodged with the plaintiffs' counsel, and was subsequently delivered to the plaintiffs.

March 25, 1870, Petrie & Co. insured $2,500 on the mill and machinery in the Ætna Insurance Co., of New York, and the policy was subsequently renewed to extend to June 28, 1871,—" loss, if any, payable to Sleeper & Roby, as mortgagees; other insurance permitted without notice until required." The existence of this policy was known to the plaintiffs on November 29, 1870; and it was mutually understood between the plaintiffs and Guion that it should be kept on foot by Guion. Guion purchased the Sleeper mortgage almost immediately after the auction; and, upon January 3, 1871, in pursuance of the above understanding, procured the following indorsement upon the Ætna policy,—"loss, if any, now payable to Wm. N. Guion, assignee for Petrie & Co., mortgagees."

January 20, 1872, the plaintiffs entered into a written agreement with Guion to surrender possession to him, he to sell at public auction, and pay the plaintiffs the surplus, if any, above the mortgage debt. Under this agreement, Guion went into possession.

The plaintiffs introduced testimony tending to show that Samuel C. Clark, the agent of the defendants who issued the policy in suit, was at that time aware of the true state of the title, and of the existing policy in the Ætna Insurance Co. Clark testified for the defendants that he was not then aware of those facts, and that the plaintiffs represented to him that they were the owners of the property, and that there was no prior insurance.

It appeared that, some time after the fire, Clark accompanied the counsel for the plaintiffs on a visit to the head-quarters of the Hartford and New York companies which had insured this property. Clark testified that he consented to go at the plaintiffs' request, and see if the matter could be settled. Subject to exception, the plaintiffs were permitted to ask Clark, upon cross-examination,—"Did you try to have the Hartford company pay Tuck & Plummer when you went out there?" Clark answered,—" I recommended them to compromise the matter."

As to insurable interest, the jury were instructed, in substance, as follows:

" Upon the admitted facts, the plaintiffs had an insurable interest. They had an agreement for the purchase of the property, subject to the Sleeper mortgage, and they had made part payment, and had taken possession under this agreement: they had not the legal title, but they had an equitable interest. The agreement was a contract which the courts would compel Guion to carry out: it was a contract under which Tuck & Plummer could acquire the legal title, subject to the Sleeper mortgage, by performing their part of the contract. Their insurable interest was the right they had under that Guion contract. What the value of that right was is a question of fact for the jury." To these instructions the defendants excepted.

The jury were instructed, that even if Clark was not aware of the existence of the Sleeper mortgage, or of the prior insurance, or of the true state of the title, yet, under the statute, the plaintiffs' omission to state the facts, or misstating the facts, as to any of these matters,

would not avoid the policy, unless such omission was intentional and fraudulent. To this instruction the defendants excepted.

The jury were further instructed, that, apart from the reduction required if they found for the plaintiffs under the statute, the plaintiffs, if entitled to a verdict, could recover one half the loss on the property insured under the $1,750 clause, not exceeding their insurable interest therein. Similar instructions were given as to the property insured under the $750 clause. To these instructions the defendants excepted.

The following written questions were submitted to the jury, which they answered as below, at the time of returning their general verdict:

1. "What was the entire value of the steam-mill, with engine-house and shed attached?" *Ans.* "$3,000."

2. "What was the value of Tuck & Plummer's insurable interest in the steam-mill, with engine house and shed attached, at the date of the insurance [December 2, 1870]?" *Ans.* "$2,000."

3. "What was the loss on the steam-engine, boiler, shafting, and steam-pipes?" *Ans.* "$700."

4. "What was the value of Tuck & Plummer's insurable interest in the steam-engine, boiler, shafting, and steam-pipes, at the date of the insurance [December 2, 1870]?" *Ans.* "$750."

The jury returned a verdict for the plaintiffs, assessing damages for the loss on the steam-mill, with engine-house and shed attached, at $1,000, and for the loss upon the steam-engine, boiler, shafting, and steam-pipes, at $375, with interest on both sums from April 8, 1871, to September 25, 1873,—amounting in all to $1,578.27.

Motion to set aside the verdict. The plaintiffs have leave to file *remittitur*, if necessary. All documentary evidence used on the trial is made a part of this statement.

The case was reserved by JEREMIAH SMITH, J., at the September term of the supreme judicial court, 1873.

*Whipple, Jewell,* and *Barnard,* for the plaintiffs.

*Tappan, Mugridge,* and *Pike & Blodgett,* for the defendants.

LADD, J. I have come to the conclusion that there is no legal reason why the plaintiffs should not have judgment on the verdict, provided they remit the sum of $25, and interest thereon from April 8, 1871, to September 25, 1873.

Without the assistance of an argument or brief from the plaintiffs' counsel, I think the case shows an answer to all the defendants' objections.

Their first point is, that the true state of the title was not disclosed by the plaintiffs at the time of procuring the insurance; but that they stated that they were the owners when they were not. It is certain they had an equitable and insurable interest of some amount in the premises by virtue of the assignee's sale, and the written contract made in pursuance of that sale with Guion, the assignee in bankruptcy of

Petrie & Co. They may be said to have been the equitable owners to the extent of that interest.

But the jury were instructed that under the statute (Gen. Stats., ch. 157, sec. 2) the plaintiffs' omission to state the facts as to this matter would not avoid the policy, unless such omission was intentional and fraudulent. The verdict under these instructions settles the fact that the omission was not intentional and fraudulent, and I am of opinion that this brings the case within the saving effect of the statute. The forfeiture of a policy for such a cause, that is, an innocent mistake or misrepresentation in making the contract, is clearly the very mischief against which the statute was intended to guard.

The second point is, that there were no proper instructions as to a reduction of the amount recoverable on the policy by reason of the risk being greater in fact than it would have been in case these mistaken representations of the plaintiffs had been true.

The answer to this is, that the case does not show that such instructions were not given, and it is to be presumed they were given. Besides, no such exception appears in the case; and it is in accordance with the uniform and familiar practice in this state to hold that if the defendants wanted more specific instructions on this point than were given, they should have asked for them at the trial.

The third point is, that the policy provides that the insured shall be entitled to recover, in case of loss, only the proportion which the sum insured bears to the whole amount of all the insurances which were on the property; that there were in fact three policies, two besides that of the defendants; and yet the jury were directed to assess the plaintiffs' damages on the basis that there was but one other policy,— that in the North American company,—leaving out of the account entirely the policy in the Ætna company for $2,500, obtained by Petrie & Co., payable in case of loss to Sleeper & Roby, mortgagees, and indorsed by that company, payable to Guion, assignee for Petrie & Co., mortgagees.

The answer to this is, the policy in the Ætna company was upon a distinct and separate interest in the property from that upon which the defendants' policy was written. That insurance was on the interest of the mortgagees, while this was on the equity of redemption. The jury were properly directed to apportion the loss between the two companies which had insurances on the same interest according to the amount of the respective policies, taking as a basis, not the whole value of the property, but the value of the plaintiffs' insurable interest, that is, of their interest as owners of the equity of redemption. There was certainly no injustice in this, and I see no legal objection to the course pursued.

The fourth point is, that inasmuch as the special finding of the jury shows the actual loss on the boiler, shafting, and steam-pipe to have been $700, the jury were wrong in assessing the damages at $375, or one half the value of the property, instead of one half of the loss on that property, which would be $350. But the case provides that

the plaintiffs may enter a *remittitur ;* and I think they must remit this $25 and interest before judgment can be entered on the verdict.

The fifth point relates to the execution of the deed from Guion to the plaintiffs. If I correctly understand the case, one complete answer to this objection is, that the deed was immaterial, for the reason that it was not delivered until after the date of the policy in suit. If I am right in this, it is not necessary to inquire whether the proof of its execution was sufficient.

CUSHING, C. J. I have nothing to add to what has been said by my brother LADD.

SMITH, J., concurred.

If the plaintiffs remit $25 and interest, they will be entitled to

*Judgment on the verdict.*